IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JESSICA M. KEESER,

              OPINION AND ORDER

          Plaintiff,

              18-cv-778-bbc

     v.

ANDREW SAUL,
Commissioner of Social Security,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Jessica M. Keeser is seeking review of a final decision denying her claim for supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). (I have amended the caption to reflect the fact that the new Commissioner of Social Security is Andrew M. Saul.) Plaintiff contends that she has been disabled since March 2014 because of a combination of physical and mental impairments. An administrative law judge concluded that even though plaintiff has severe impairments, she is not disabled because she can perform a range of sedentary work for which there are a significant number of jobs in the national economy. Plaintiff contends that the administrative law judge's decision is not supported by substantial evidence. For the reasons explained below, I am not persuaded by plaintiff's arguments. Therefore, I will affirm the commissioner's decision.

      The following facts are drawn from the administrative record (AR).

1

FACTS

A. <u>Social Security Application and Background</u>

Plaintiff Jessica Keeser was born in 1974. She filed for supplemental security income in October 2014, contending that she had been disabled since March 2014 by numerous physical and mental impairments, including a post-aneurysm seizure disorder, short-term memory loss, degenerative joint disease, osteoarthritis of the left and right knees, obesity, depression, anxiety, schizophrenia, bipolar disorder, post-traumatic stress disorder, chronic obstructive pulmonary disease, asthma, migraine headaches and a right rotator cuff tear. Her application was denied initially and on reconsideration, and plaintiff requested a hearing before an administrative law judge. After the hearing, the administrative law judge issued a written decision concluding that plaintiff was not disabled. AR 13-28. In July 2018, the appeals council denied plaintiff's request for review. AR 1.

B. <u>Relevant Medical Evidence and Opinions</u>

1. <u>Physical impairments</u>

Plaintiff had reconstructive surgery on her right knee in 2012. AR 488. She continued to experience knee pain, instability and falls until July 2014, when she had a total right knee replacement. AR 638. In April 2016, medical imaging showed that plaintiff's left knee had osteoarthritis. AR 1081-82. In June 2016, she had a total left knee replacement. AR 1104.

2

Plaintiff's right shoulder and elbow began hurting in 2012, and she had difficulty lifting things. AR 450. The medical records show that plaintiff complained about her right shoulder on and off from 2012 until she had surgery to repair a torn tendon in her right shoulder in February 2017. AR 600, 799, 963, 1185, 1201.

In July 2014, plaintiff's treating physician's assistant, Rachael Busalacchi, wrote a letter stating that because of plaintiff's "multiple health issues and scheduled surgeries," plaintiff may be off work "over 12 months depending on surgical recommendations." AR 795.

In June 2015, Dr. Michael Sullivan, a family practice physician who supervised Busalacchi, completed a "physical residual functional capacity questionnaire" indicating that plaintiff had back pain, shoulder pain, knee pain, gait abnormality and used a cane or crutches for an assistive device. AR 994-98. He concluded that plaintiff could sit for approximately 15 minutes and stand for 10 minutes, but could sit and stand less than two hours in an eight-hour day. He also stated that plaintiff would need to shift positions at will and possibly walk five minutes of every 15 minutes. She would require unscheduled breaks and could lift less than ten pounds. She could use her hands and fingers zero percent of the workday, and she could use her arms approximately 10% of the workday. She likely would be absent more than four days each month. Sullivan also stated that plaintiff struggled with chronic low back and knee pain, "but maybe more limiting is her seizure disorder, psychiatric limitations and mental function related to brain aneurysm rupture." AR 998.

Dr. Sullivan also completed a "seizure residual functional capacity questionnaire," writing that plaintiff has unpredictable, generalized seizures that last for approximately five minutes, with symptoms lasting between one and three hours, including confusion and exhaustion. AR 1001-04. He gave the opinion that plaintiff would likely be absent four or more days each month and would not be capable of tolerating even low stress work. Id.

As for her mental health, plaintiff has a history of depression and anxiety and has been given diagnoses of bipolar disorder and personality disorder. (Plaintiff has not developed any argument that the administrative law judge should have given more consideration to her bipolar or personality disorder.) Her medical records show that she has received psychotherapy and has taken numerous medications for her mental health problems. She had a brain aneurysm at age 19 and had three clips placed in her brain. She occasionally suffers seizures and short-term memory problems as a result of the aneurysm. She went to the emergency room for a possible seizure in September 2014. AR 714-15,

In March 2013, before plaintiff's alleged onset date, consultative psychologist Cheryl Roets completed an examination report stating that plaintiff had difficulty concentrating, was easily distracted and had racing thoughts. AR 561-67. She was able to name only two of the four states bordering Wisconsin and her ability to engage in abstract thinking was in the low average range. AR 564. Roets concluded that plaintiff's prognosis was guarded, her ability to maintain concentration, attention and work pace was marginal and she would struggle with routine work stress and changes in the environment. AR 565. Roets also stated that it would be best if someone else managed plaintiff's funds. AR 566.

Plaintiff was examined by two independent consultative examiners in March 2015. Dr. John Kelly, a family practice physician, found that plaintiff had residual cognitive defects from her ruptured cerebral aneurysm, but that she could be trained to use a computer and possibly to do minor office work. AR 836. Dr. Richard Yanchar, a clinical psychologist, found that plaintiff was more limited, with social anxiety, fair to poor abstract thinking, low average judgment, impoverished mental activity and impaired memory functions. AR 842-44. Yanchar stated that plaintiff's ability to maintain concentration, attention and work pace and to withstand routine work stressors or adapt to changes appeared to be very poor. AR 845.

## C. Administrative Hearing

At the administrative hearing, plaintiff testified that she had last worked performing sanitation work at Tyson Foods in 2014, which required her to spray down equipment and lift between 10 and 30 pounds. AR 95. She left that job after three or four months because she could not handle it physically. Id. She testified that she could drive, but did not drive often. Id. She stated that she could stand on her feet for 10 to 15 minutes at a time before needing to sit down or lie down and put up feet. AR 99. She could walk about half a block before stopping, and had been using a walker for about a year. AR 96. Before getting the walker, plaintiff used crutches or a cane. AR 98. She can lift no more than 10 pounds with her left hand, and less with her right because she had surgery on her right shoulder in 2017. On a typical day, plaintiff lies down or sits with her feet up for 80 percent of the day. AR

98.  She has an assistant who helps her with meals.  Plaintiff testified that she does not perform any household chores with the exception of folding laundry, which she can sit and fold for about five minutes before needing to lie  down.  AR 97.  Her assistant takes her to the store if she needs something, but plaintiff generally waits in the car or sometimes rides on a scooter.  AR 97.  Plaintiff testified that she has a seizure about once a month and usually needs two days to recover from them.  AR 99.  Her hands are numb about 80 percent of the day.  AR 100.  She also testified that she has trouble being around people, and that she has to stay home by herself two or three days a week.  AR 96.  She occasionally has crying spells and has to sit alone in a dark room at her house until she feels better.  AR 99.

### D.  Administrative Law Judge's Decision

The administrative law judge found that plaintiff had not engaged in substantial gainful activity since before her application date on October 8, 2014.  AR 15.  (She earned $2,517.99 from Tyson Prepared Foods in early 2014.  Her work history shows only sporadic and short-term employment in the years before 2014.)  The administrative law judge next found that plaintiff had the following severe impairments: status-post aneurysm with seizure disorder and short-term memory loss, degenerative joint disease of the left knee, status post-replacement, obesity, depression and anxiety.  Id.  She found that none of plaintiff's physical or mental impairments met or medically equaled the severity of a listed impairment.  AR 16.

The administrative law judge found that plaintiff had the residual functional capacity to perform sedentary work with the following limitations:

occasionally climb ramps and stairs, but never climb ladders or scaffolds. The claimant can occasionally balance, stoop, and kneel, but never crouch or crawl. She needs to avoid all exposure to hazards (such as unprotected heights or moving mechanical parts) and extreme cold. The claimant needs to avoid even moderate exposure to dusts, fumes, odors, and other pulmonary type irritants. She is limited to understanding, remembering, and carrying out simple instructions, and making simple, work-related decisions. The claimant can tolerate only occasional interaction with supervisors, coworkers, and the public. Finally, she can tolerate only occasional change in work location.

AR 18-19.

The administrative law judge concluded from a vocational expert's testimony that plaintiff could perform sedentary work that existed in the national economy. The administrative law judge identified the positions of sorter, surveillance monitor and charge account clerk. AR 27.


OPINION

Plaintiff contends that the administrative law judge erred by failing to (1) adequately address whether plaintiff's physical and mental impairments, in conjunction with her morbid obesity, met or medically equaled a listing impairment; (2) give adequate consideration to the medical opinions in the record; and (3) give adequate consideration to plaintiff's subjective symptoms. (Plaintiff states in her brief that the she has additional severe impairments not addressed by the administrative law judge, including osteoarthritis of left and right knees, schizophrenia, bipolar disorder, post-traumatic stress disorder, chronic obstructive pulmonary disease, asthma, migraine headaches and a right rotator cuff tear. Dkt. #13 at 13. However, she has not developed any arguments about these

additional impairments, so I do not address whether the administrative law judge gave them adequate consideration.)

In reviewing the administrative law judge's decision with respect to the three issues plaintiff raises, I must determine whether the decision is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted). This deferential standard of review "does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision." Id. The administrative law judge must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. Id. See also Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."); Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009).

A. Medical Listings

Plaintiff contends that this case must be remanded because the administrative law judge failed to explain adequately why plaintiff's impairments did not meet or equal the criteria of a listed impairment. If a claimant has an impairment that meets or equals an impairment found in the Listing of Impairments, then that claimant is presumptively eligible for benefits. 20 C.F.R. § 416.925. Plaintiff has the burden of showing that her impairments satisfy all of the various criteria specified in the listing. Ribaudo v. Barnhart, 458 F.3d 580,

583 (7th Cir. 2006). A claimant also may satisfy a listing by showing that her impairment is accompanied by symptoms that are equal in severity to those described in the listing, although a finding of medical equivalence requires an expert's opinion on the issue. Barnett v. Barnhart, 381 F.3d 664, 670 (7th Cir. 2004). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." Minnick v. Colvin, 775 F.3d 929, 935 (7th Cir. 2015).

1. Listings 1.02 and 1.03

An initial question is whether the administrative law judge erred in failing to consider adequately whether plaintiff's knee and shoulder impairments met or medically equaled the listing for 1.02 (Major dysfunction of a joint) and 1.03 (Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint). To meet these listings, plaintiff had to produce medical evidence of the following:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> > A. Involvement of one major peripheral weight-bearing (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; OR
> >
> > B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

Listing 1.03 Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur within 12 months of onset.

"Inability to ambulate effectively" is defined as:

an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

"Inability to perform fine and gross movements effectively" is defined as:

an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

It is undisputed that plaintiff has had numerous joint problems, including total knee replacements of her left and right knees and surgery to repair a tear on her right shoulder. The medical evidence shows that plaintiff has used a cane, crutches or walker at various times and has had difficulty using both of her arms and hands because of numbness and pain. Plaintiff cites a doctor's observation that she had severe osteoarthtitis in her right knee, used a cane and ambulated poorly before her right knee replacement surgery in 2014 and used a four-wheeled walker after her surgery. AR 594, 613, 994. She also points to medical evidence showing that she was having difficulty walking on her own in 2015, that

her left knee deteriorated and she had a total left knee replacement in 2016.  She contends that her torn shoulder cartilage, hand numbness and morbid obesity all interfered with her ability to use assistive devices for walking.  Plaintiff contends that the totality of the evidence is sufficient to make at least a "prima facie" showing that she satisfies the criteria of listing 1.02 or 1.03.

In finding that plaintiff's physical impairments did not meet or medically equal the criteria of any listed impairment, the  administrative law judge did not identify any specific listings relating to physical impairments and did not mention any specific criteria for any listing.  The administrative law judge stated that none of plaintiff's treating or examining physicians "reported all other necessary clinical, laboratory, pathology, radiographic, or operative findings" required to satisfy the criteria of a listing impairment.  AR 16.  Plaintiff contends that because the administrative law judge did not identify the specific criteria of listing 1.02 or 1.03, explain which of those criteria plaintiff failed to meet or otherwise discuss this evidence in the context of her listing analysis, the administrative law judge's decision is not supported by substantial evidence.

Plaintiff's argument is not persuasive for three reasons.  First, the likely reason for the administrative law judge's failure to discuss any specific listing impairment is that plaintiff's counsel stated expressly at the administrative hearing that no listings were met.  AR 93.  In particular, the administrative law judge asked counsel, "Do you think any listings are met?"  Counsel responded, "No, you honor."  Id.  If plaintiff wanted the administrative law judge

to consider a specific listing impairment, she should have notified the administrative law judge.

Second, plaintiff has failed to show that her impairments met or equaled a medical listing for 12 consecutive months, as required by 20 C.F.R. § 416.925. Many of the medical records that plaintiff cites are not very useful. She cites several records from 2006, 2011 and 2012 that date from before her alleged onset date of March 2014, and show that she had joint pain and difficulty walking. However, it is undisputed that plaintiff was able to work during that time period. Additionally, plaintiff had total replacement surgery on her right knee in July 2014, after which her condition improved. The medical records showing that plaintiff had left knee problems are from 2015. But plaintiff had total left knee replacement in June 2016, and she has not pointed to any medical evidence showing that she was unable to ambulate effectively after that surgery. She certainly has not shown that she was unable to ambulate effectively for a continuous period of 12 months as defined by 1.00B2b.

Plaintiff's medical records regarding her shoulder problems are similar. Although plaintiff's medical records show that she complained of right shoulder pain and limitations on and off from 2012 until her right shoulder surgery in 2017, she has not pointed to medical evidence showing that *both* of her upper extremities were impaired for a period of 12 months to the extent that she was unable to perform fine and gross movements effectively, as defined by listing 1.002Bc. Because she has not identified such evidence, she has not shown that she meets the criteria of listings 1.02 or 1.03.

Third, although the administrative law judge did not discuss the medical records related to plaintiff's physical impairments at step 3, in the section of her decision discussing plaintiff's residual functional capacity, she provided her rationale for concluding that plaintiff's joint problems were not severe enough to satisfy any listing. In particular, she explained that although plaintiff had severe joint problems, the medical record did not support a finding that plaintiff's joint problems were so severe as to be disabling for at least 12 months during the relevant time period. AR 16. The administrative law judge noted that after plaintiff's knee replacement surgeries, she routinely had a normal, or only a slightly abnormal gait, and most records do not mention her using an assistive device for ambulation. AR 16, 19-20. See also AR 717-18 (September 2014 note stating that plaintiff had normal muscle tone, normal coordination, no joint swelling, no musculoskeletal deformities and that she left in ambulatory condition); AR 781 (October 2014 note stating that plaintiff's gait was slightly antalgic); AR 774-76 (November 2014 note stating that plaintiff was complaining of right knee pain, swelling and difficulty walking, but that she had a normal gait and was directed to wear a brace); AR 836 (March 2015 exam note stating that plaintiff was ambulatory with steady gait, no assistive devices and could get on and off exam table on her own power); AR 890, 903 (March 2015 notes stating that plaintiff had normal range of motion in her extremities, normal gait and good coordination); AR 865 (April 2015 emergency room note stating that plaintiff's extremities were normal, she had normal strength and muscle activity and when she left, she walking with a friend); AR 1090 (May 2016 note stating that plaintiff had normal upper and lower extremities); AR 1117 (July

13

2016 note stating that plaintiff was able to walk approximately two blocks without an assistive devices prior to her left knee surgery). These medical records provide substantial evidence for the administrative law judge's conclusion that plaintiff's impairments did not meet or medically equal a listing impairment.

Finally, plaintiff contends that the administrative law judge failed to consider whether her obesity increased the severity of her joint disorders. But the administrative law judge found that plaintiff was obese and discussed how plaintiff's obesity may affect her other impairments. She also considered plaintiff's obesity in limiting plaintiff to sedentary work. AR 22. Plaintiff has not cited to any evidence showing that her obesity made her unable to ambulate effectively, perform gross and fine movements effectively or otherwise limit her in ways that the administrative law judge did not consider. Nor has plaintiff shown that her obesity, in combination with any other impairment or by itself, met or medically equaled another listing.

2. Listings 12.04 and 12.06

Turning to plaintiff's mental impairments, the administrative law judge concluded that plaintiff's mental impairments do not meet or medically equal the criteria of listings 12.04 (depressive, bipolar and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders). The paragraph B criteria for both listings 12.04 and 12.06 require an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understanding, remembering and applying information; (2) interacting with others; (3)

concentrating, persisting or maintaining pace; and (4) adapting and managing oneself. The administrative law judge concluded that plaintiff had only moderate limitations in understanding, remembering and applying information, interacting with others and concentrating, persisting and maintaining pace, and only mild limitations in adapting or managing herself. AR 18. In reaching these conclusions, the administrative law judge noted that the records showed that plaintiff could pay bills, count change, handle a savings account, use a checkbook, recall some general information and follow three-step commands. AR 17. In addition, plaintiff generally was pleasant, cooperative, alert and oriented during medical examinations, and she could understand and follow conversations. AR 17-18.

Plaintiff argues that the administrative law judge ignored evidence suggesting that her mental impairments were more than moderately limiting. In particular, she points to the consultative examination conducted by Dr. Richard Yanchar in March 2015. AR 840-45. Yanchar noted that plaintiff's "stream of mental activity was somewhat impoverished," her "memory processes appear to have a degree of impairment," she has a poor "fund of information," her abstract thinking processes appear fair to poor and she appeared to be "mildly psychomotorically retarded based on slowed response latencies to questions." AR 842-43. Yanchar administered a memory test, for which plaintiff scored "borderline" or "extremely low" in every category. AR 844. He also stated that plaintiff has a "longstanding difficulty with managing moods" and "a degree of social anxiety as she has intimidation when she is around strangers." Id. Yanchar concluded that plaintiff had a primary diagnosis of bipolar disorder with current features of depression, and may also have a social anxiety

disorder and low average or borderline intellectual functioning. AR 845. He stated that plaintiff's prognosis "appears quite guarded," that plaintiff's "abilities to maintain concentration, attention, and work pace unfortunately appear very poor," and her "abilities to withstand routine work stressors or adapt to changes appear very poor." Id. Finally, he stated that plaintiff "should have a payee for any Social Security funds deemed appropriate for her." Id.

Plaintiff also cites the "seizure residual functional capacity" questionnaire completed by Dr. Michael Sullivan, her treating physician. AR 1001-04. Sullivan wrote that plaintiff has unpredictable, generalized seizures that last for approximately five minutes, with symptoms lasting between one and three hours, including confusion and exhaustion. He gave the opinion that plaintiff would likely be absent four or more days each month and is not capable of tolerating even low stress work. Id.

However, the administrative law judge explained why he gave little weight to Dr. Sullivan's opinions and only some weight to Dr. Yanchar's opinions. AR 24-25. Sullivan's opinions were based on one examination of plaintiff and his opinions about plaintiff's seizures and stress tolerance were based solely on plaintiff's own statements. AR 24. The medical record does not support Sullivan's statement that plaintiff has frequent seizures that would cause her to miss work four or more days each month. Alvarado v. Colvin, 836 F.3d 744, 747-49 (7th Cir. 2016) (finding that administrative law judge properly discounted claimant's treating physician's opinion that was based on subjective reports rather than objective measurements).

As for Yanchar, the administrative law judge found that Yanchar's conclusions were not supported by the objective medical evidence. The administrative law judge noted that plaintiff's treating providers described plaintiff as alert, oriented, pleasant and cooperative with a normal mood, affect and behavior. AR 25. In addition, although notes and testing showed that plaintiff had some memory deficits, the notes did not show that the deficits were more than moderate. Id. For example, at her most recent psychological evaluation, plaintiff was able to correctly name the most recent four United States presidents, perform some mathematical calculations, perform serial seven tasks with only one error and recall three out of three items after a five-minute delay. Id.

Finally, the administrative law judge relied on the opinions of the state agency psychological consultants in concluding that plaintiff's impairments did not meet or medically equal a listing. The administrative law judge gave significant weight to the opinions of three state agency consultative examiners, Dr. Spear, Dr. Tessler, and Dr. Phillips, all of whom gave the opinion that plaintiff would have moderate limitations in mental functioning. (Dr. Phillips gave the opinion that plaintiff would be markedly limited in her ability to understand, remember and carry out detailed tasks, but the administrative law judge explained adequately why she was giving this opinion only little weight. AR 24-25.) In addition, Dr. Kelly, another consultative examiner, concluded in March 2015 that plaintiff was alert, oriented, understood questions and could answer them appropriately and could follow three-step commands. AR 837. The opinions of these state-agency consultants constitute substantial evidence on the issue whether plaintiff's impairments meet

or medically equal any presumptive disability listing. <u>Filus v. Astrue</u>, 694 F.3d 863, 868 (7th Cir. 2012). Plaintiff has not shown that this case should be remanded so that the administrative law judge can reconsider whether her impairments meet or medical equal a listing impairment.

## B. <u>Opinion Evidence</u>

Plaintiff next contends that the administrative law judge failed to give proper weight to opinions of treating physician's assistant Rachel Busalacchi and the doctor overseeing her, Dr. Sullivan, AR 785, 994-98, 1004-04; her consultative examiners Dr. Kelly, Dr. Roets and Dr. Yanchar, AR 565, 837-38, 845; and the state agency reviewing physicians, Dr. Khorshidi, Dr. McLarnon, Dr. Spear, Dr. Tessler and Dr. Phillips, AR 23-25. Plaintiff's arguments are not persuasive.

### 1. <u>Physician's assistant Busalacchi and Dr. Sullivan</u>

Under the regulations applicable to plaintiff's claim, the opinions of a treating provider are entitled to controlling weight if they are supported by objective medical evidence and are consistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); <u>Roddy v. Astrue</u>, 705 F.3d 631, 636 (7th Cir. 2013). Although an administrative law judge is not required to give a treating physician's opinion controlling weight, she is required to provide a sound explanation for rejecting it. <u>Id.</u> Further, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require

the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009).

In this instance, the administrative law judge gave little weight to Busalacchi's opinions because she thought that Busalacchi's July 2014 opinion predated plaintiff's onset date. The administrative law judge was incorrect, as plaintiff's alleged onset date was March 2014 and she filed her application in October 2014. However, this is not sufficient reason to remand this case. The administrative law judge also noted that Busalacchi's opinion was uncertain and not particularly helpful. Busalacchi's "opinion" consists of one sentence stating that because of plaintiff's "multiple health issues and scheduled surgeries," plaintiff may be off work "over 12 months depending on surgical recommendations." AR 795. I agree with the administrative law judge that this letter is vague and suggests only that plaintiff might have limitations in the future. In addition, this letter was written shortly after plaintiff's right knee surgery and before later examinations showing that plaintiff had a normal gait, normal range of motion and no motor deficits in her extremities.

As for Dr. Sullivan's opinions, he completed a physical residual functional capacity questionnaire indicating that plaintiff has back pain, shoulder pain, knee pain, gait abnormality and uses a cane or crutch for an assisted device. AR 994-98. He concluded that plaintiff would be severely limited in her ability to sit, stand, walk and use her arms and hands. As discussed above, the administrative law judge gave little weight to Sullivan's June

2015 opinions because Sullivan was not actually a treating physician, having evaluated plaintiff only once, and Sullivan's opinion was based on plaintiff's own report. AR 23-24, 995. In addition, the administrative law judge concluded that Sullivan's opinions were not supported by objective evidence, particularly plaintiff's normal gait, lack of motor or sensation deficits and normal reflexes in many examinations. AR 24.

Plaintiff makes little effort to challenge the administrative law judge's analysis. Her primary argument seems to be that the administrative law judge failed to discuss which findings, observations, treatment or other evidence were inconsistent with Sullivan's opinions. But the administrative law judge's decision included a thorough analysis of plaintiff's treatment records and functioning immediately before her discussion of Sullivan's opinions. The administrative law judge was not required to repeat her analysis in the context of evaluating the opinion evidence. Curvin v. Colvin, 778 F.3d 645, 650 (7th Cir. 2015) ("We do not discount [the ALJ's discussion of the claimant's impairments and the objective medical evidence] simply because it appears elsewhere in the decision."); Rice v. Barnhart, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole[.]") Therefore, plaintiff's argument that the administrative law judge failed to give adequate weight to Busalacchi's and Sullivan's opinions is not persuasive and does not provide a reason to remand this case.

## 2. Consultative psychologists and state agency reviewing physicians' opinions

The administrative law judge gave significant weight to the opinions of the state agency reviewing psychologists, explaining that the opinions were consistent with plaintiff's examination findings. The one exception was one part of Dr. Phillips' opinion, that plaintiff had marked limitations in her ability to understand, remember and carry out detailed instructions. AR 24-25. The administrative law judge gave some weight to the opinions of Dr. Yanchar and Dr. Roets. AR 25. As discussed above, the administrative law judge gave a thorough explanation for the weight he gave to these opinions.

The administrative law judge gave only little weight to the opinions of state agency doctors who evaluated plaintiff's physical impairments and concluded that plaintiff could perform light work. AR 23. The administrative law judge explained that plaintiff was more limited than those doctors suggested and she limited plaintiff to sedentary work. Id. Although plaintiff argues in her brief that the administrative law judge did not provide an adequate explanation for the weight she gave to these opinions, her argument is meritless and makes little sense. The administrative law judge's discussion of this issue is thorough and favorable to plaintiff.

## C. Subjective Symptoms

Finally, plaintiff contends that the administrative law judge failed to account for her subjective complaints in assessing her residual functional capacity. In her functional report dated June 2015, plaintiff reported that her roommate helps her bathe, dress, clean and cook.

She cannot go to a doctor's appointments without reminders and she needs a cane, walker or wheelchair to walk. AR 361-66. Plaintiff elaborated on her symptoms at the administrative hearing, stating that she was severely limited in her ability to do anything. She rarely drives, does not shop on her own, does not perform chores, cannot lift more than a few pounds, cannot stand on her feet for more than 10 or 15 minutes, needs to sit or lie down throughout the day, has memory problems and has difficulty being around other people. AR 95-99.

However, the administrative law judge acknowledged that plaintiff reported "needing assistance with everything" and had testified that she could not work because of her severe limitations in standing, sitting and interacting with others. AR 19. The administrative law judge discounted plaintiff's allegations in light of the objective medical evidence showing that plaintiff's joint problems generally improved after her surgeries, that her moods improved with treatment and that her mood and affect were generally normal, pleasant and cooperative at her numerous medical appointments. Accordingly, I conclude that the administrative law judge gave an adequate reason for discounting plaintiff's subjective symptoms. I conclude also that substantial evidence supports the administrative law judge's decision that plaintiff is not disabled. Therefore, I will affirm the commissioner's decision denying benefits.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, is AFFIRMED and plaintiff Jessica Keeser's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 5th day of November, 2019.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge